**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000325
29-JUN-2012
09:54 AM**

NO. CAAP-11-0000325

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ROCKY R. GILDING,
Plaintiff-Appellee/Cross-Appellant,
v.
STATE OF HAWAI'I,
Defendant-Appellant/Cross-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-1852)


MEMORANDUM OPINION
(By: Nakamura, C.J., Foley, and Fujise, JJ.)

Defendant-Appellant/Cross-Appellee State of Hawai'i (SOH) appeals from the Judgment entered March 9, 2011, in the Circuit Court of the First Circuit[1] (circuit court) in favor of Plaintiff-Appellee/Cross-Appellant Rocky R. Gilding (Gilding). Gilding cross-appeals from the same Judgment.

On appeal, SOH contends the following:

(1) Circuit court erred when it awarded special damages for Gilding's medical expenses. Finding of Fact (FOF) 36 is in error and Conclusion of Law (COL) 6 is wrong.

(2) Circuit court erred when it failed to apportion damages between Gilding's alleged injury and his pre-existing condition. FOF 29 is in error and COL 5 is wrong.

---

[1] The Honorable R. Mark Browning presided.

(3) Circuit court's finding of sole liability in favor of Gilding was against the weight of the evidence presented at trial. COL 4 is wrong.

On cross-appeal, Gilding contends:

(1) Circuit court erred when it found insufficient evidence to support an award of future medical expenses. FOF 37 is in error.

(2) Circuit court erred when it found that testimony of Robert A. Male, Ph.D., (Dr. Male) was not credible. FOF 42 is in error.

(3) Circuit court erred when it found insufficient evidence to support an award for loss of Gilding's past and future earning capacity, and loss of past and future household services. FOF 43 is in error.

(4) Circuit court erred when it entered judgment in favor of Gilding in the amount of $300,516. COL 8 is wrong.

## I.  BACKGROUND

On September 15, 2006, while incarcerated at Oahu Community Correctional Center (OCCC), Gilding and eight other inmates were transferred by van to the Federal Detention Center (FDC). The inmates were restrained by waist chains and leg irons, which hindered their movements.

On September 10, 2008, Gilding filed a Complaint against SOH, seeking damages for an injury allegedly sustained during the transfer from OCCC to the FDC. In his Complaint, Gilding alleged that as he stepped down from the van onto a wooden stool, the stool slid out from under him, causing him to fall back and hit his neck, left shoulder, and back on the bottom of the van's door well and ground. Gilding asserted that, due to this incident, he sustained permanent and disabling injuries as well as severe emotional and mental distress.

Trial was held January 31, February 1, and February 2, 2011. Circuit court entered its FOFs, COLs, and Judgment on March 9, 2011. SOH filed its notice of appeal on April 6, 2011. Gilding cross-appealed on April 12, 2011.

## II. STANDARDS OF REVIEW

### A. Findings of Fact (FOF)/Conclusions of Law (COL)

"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and ellipses omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. [The Hawai'i Supreme Court has] defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Leslie v. Estate of Tavares, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (internal quotation marks and citations omitted) (quoting State v. Kotis, 91 Hawai'i 319, 328, 984 P.2d 78, 87 (1999)).

An appellate court is "not confined to the trial court's express findings of fact and may also take into consideration the uncontradicted evidence contained in the record." Molokoa Village Development Co., Ltd. v. Kauai Elec. Co., Ltd., 60 Haw. 582, 593, 593 P.2d 375, 382 (1979). Furthermore, "[f]indings of fact . . . that are not challenged on appeal are binding on the appellate court." Okada Trucking Co., Ltd. v. Board of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. [The appellate court] ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Chun, 106 Hawai'i at 430, 106 P.3d at 353 (internal quotation marks, citations, and brackets in original omitted) (quoting Ponce, 105 Hawai'i at 453, 99 P.3d at 104).

### B.   Credibility of Witnesses

"[T]he credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001).

### III.  SOH'S APPEAL

#### A.   Circuit court did not err in ruling that Gilding was entitled to special damages of $100,516.

##### 1.   Gilding presented substantial evidence to show that his medical expenses were reasonable and necessary.

SOH contends circuit court erred in FOF 36 when it found "that substantial undisputed evidence was presented at trial showing that the reasonable value of the medical treatment [Gilding] needed as a result of his injuries amounts to $100,516.00 for which the Department of Human Services' medical assistance program has paid a discounted amount of $16,412.88." Based on this alleged error, SOH contends that COL 6, which concluded Gilding was "entitled to an award of special damages for his past medical expenses in the amount of $100,516.00" is necessarily wrong.

Medical expenses are recoverable as compensatory special damages. Dunbar v. Thompson, 79 Hawai'i 306, 315, 901 P.2d 1285, 1294 (App. 1995). "Special damages compensate claimants for specific out of pocket financial expenses and losses[.]" Bynum v. Magno, 106 Hawai'i 81, 96, 101 P.3d 1149, 1164 (2004) (internal quotation marks, citation, and emphasis omitted). "In an action to recover medical expenses caused by a defendant's negligence, a plaintiff must show that the medical services obtained were necessary and the charges were reasonable

4

as required for the injuries sustained." Id. at 86-87, 101 P.3d at 1154-1155.

Medical evidence received into evidence at the bench trial included Gilding's medical records from Straub Clinic and Hospital (Straub) dating back to 1964. The records indicated Gilding was admitted into Straub for cervical surgery on April 9, 2008 and was discharged on April 11, 2008. Those records did not include a record of bills and charges for any of the medical services rendered. Evidence offered for identification included the Independent Medical Examination/Permanent Partial Impairment Rating report (IME), which summarized Gilding's medical reports.

Also admitted into evidence were liens from ACS Healthcare Solutions (ACS), the agency contracted by the State of Hawai'i Department of Human Services (DHS) to administer DHS's third-party liability casualty cases. The liens established DHS's right to recover from a third party "a sum of money equal to that paid . . . by DHS, for any and all hospital, medical, and similar expenses necessitated by said accident or incident."[2]

Included with the August 11, 2009 and December 27, 2010 liens were "itemized medical recap" sheets listing the medical services for Gilding paid by DHS. The January 27, 2011 amended

---

[2] Hawaii Revised Statutes (HRS) § 346-37 provides, in pertinent part:

§346-37 **Recovery of payments and costs of medical assistance.**

. . . .

(c) If [DHS] has provided medical assistance . . . to a person who was injured . . . under circumstances creating a tort or other liability or payment obligation against a third person, [DHS] shall have a right to recover from the third person an amount not to exceed the full amount of the costs of medical assistance . . . furnished or to be furnished by [DHS].

. . . .

(o) In third-party liability situations, the medical assistance program of [DHS] shall be fully reimbursed before the claimant receives any money from the settlement or award.

lien (Amended Lien) adjusted the "Total Billed Amount" to $100,516.14 and listed DHS's payments as $16,412.88.

Even though the deposition of Mark S. Gerber, MD, (Dr. Gerber) was permitted to be used at trial in lieu of testimony, circuit court had him testify by phone as to whether the bills listed in the liens were related to the September 15, 2006 incident. Dr. Gerber testified the amounts listed in the Amended Lien were reasonable and necessary. On cross-examination, Dr. Gerber admitted he had not seen any of the itemized bills from the other doctors or Straub and had not compared the charges to those of other outside providers or hospitals. He testified that, based on his experience as a neurosurgeon, he had "a pretty good idea" what the charges were for and the amounts seemed "logical" to him.

Dr. Gerber specifically testified that he knew the following physicians who were listed on the Amended Lien and that their charges were "reasonable and necessary": James Pearce, MD, Carlos Lam, MD, Virgil Jobe, MD, Robert May, MD, Carolyn Shiraki, MD, and Debra Gadbois, CRNA.

Although the Amended Lien did not provide details as to the purpose of each billed service, the previous liens captured that information. For example, even though neither party asked if Dr. Gerber knew Amy Martin, whose charge was listed on the Amended Lien, the earlier August 8, 2009, lien indicated her charge was related to an MRI on Gilding's spine.

Alexander Yim (Yim), a supervisor with ACS, testified regarding the liens. Yim explained that when the bills for medical services come in, his staff verifies the amounts paid but does not make any determination about reasonableness.

Hawaii Rules of Evidence (HRE) Rule 303(c)(16) establishes that "[a] bill for goods or services that has been paid is presumed to be authentic and to embody fair and reasonable charges for the itemized goods or services." The liens entered into evidence provided an "itemized medical recap"

sheet listing the providers, a very brief description of the services rendered, and an indication that DHS paid the bills. The burden shifted to SOH to show that the bills were not authentic, fair, or reasonable. Because SOH failed to counter Gilding's evidence that the bills were reasonable and necessary, we conclude there was substantial evidence to support circuit court's finding "that the reasonable value of the medical treatment [Gilding] needed as a result of his injuries amounts to $100,516.00."

### 2. Gilding was entitled to special damages in the full amount of $100,516.

SOH contends that if Gilding receives special damages in the full amount of his medical expenses, the SOH will have paid twice--once when DHS paid the discounted amount of $16,412.88 to the providers, and then again when it pays Gilding the full amount of his medical expenses, including the amount DHS already paid. SOH also asserts that receiving the full amount results in a windfall to Gilding.

Under the collateral source doctrine, Gilding is entitled to special damages for the full amount of his medical expenses, even though DHS paid the providers at a deeply discounted rate. Sam Teague, Ltd. v. Hawai'i Civil Rights Com'n, 89 Hawai'i 269, 281, 971 P.2d 1104, 1116 (1999) (internal quotation marks, citation, and brackets omitted) ("Under the collateral source rule, a tortfeasor is not entitled to have its liability reduced by benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor.")

The Hawai'i Supreme Court has expressly ruled "that the collateral source rule applies to prevent the reduction of a plaintiff's award of damages to the discounted amount paid by Medicare/Medicaid." Bynum, 106 Hawai'i at 89, 101 P.3d at 1157. Here, Gilding was insured under DHS's Medicaid program, known as Med-QUEST. Under the collateral source rule, Gilding is entitled

to the reasonable value of the medical services as determined by standard (and not discounted) rates. Bynum, 106 Hawai'i at 89-90, 101 P.3d at 1157-58.

When Gilding enrolled in Med-QUEST, he signed an agreement to reimburse DHS the amount paid on his behalf by the medical assistance program from any judgment proceeds. Thus, DHS will be able to recoup its payments through its lien against Gilding. There will be no double payment by DHS nor a windfall to Gilding.

**B.** **Circuit court correctly concluded there was no basis for an apportionment of damages for Gilding's injuries.**

SOH contends circuit court erred in not apportioning damages to Gilding's pre-existing condition. SOH argues that Hawai'i case law, specifically Montalvo v. Lapez, 77 Hawai'i 282, 884 P.2d 345 (1994), supports its contention that where there is a pre-existing condition but apportionment cannot be determined, the court must apportion equally.

On the other hand, Gilding contends Montalvo stands for the proposition that where trauma aggravates a pre-existing condition, a defendant whose act of negligence caused the trauma is responsible for the entire damage.

As explained by the Hawai'i Supreme Court, a defendant is not responsible for a plaintiff's pre-existing condition but may be held responsible for aggravating the condition. Montalvo, 77 Hawai'i at 299 n.16, 884 P.2d at 362 n.16.

> Generally, a defendant is liable in damages to a plaintiff for all injuries legally caused by the defendant's negligence. However, it is well settled that a tortfeasor is liable not only for damages resulting from direct and unique injuries inflicted on the victim, but also for damages resulting from the aggravation of the victim's pre-existing disease, condition, or predisposition to injury. Such "predisposition to injury" or other special sensitivity is often involved in the context of the so-called "thin skull" or "eggshell skull" plaintiff.

Montalvo, 77 Hawai'i at 294, 884 P.2d at 357 (internal quotation marks, citations, and brackets omitted).

If the pre-existing condition is "dormant or latent" at the time of the accident, then the defendant is liable for all the damages caused by the accident. Montalvo, 77 Hawai'i at 300, 884 P.2d at 363. Only when the pre-existing condition is not dormant or latent are damages apportioned between the pre-existing condition and the injuries from the accident. Id. Under that scenario, if a jury or court is unable to apportion, the damages must be divided evenly between the pre-existing condition and the accident. Id.

In the instant case, Gilding testified he was not exhibiting any neck or back pain prior to the fall from the van. He acknowledged that prior to the accident, he had visited the infirmary, claiming he was in pain from a neck injury three to four months previously. On the stand, he admitted that the claim of injury had been false and was used as a ploy to get an additional pillow. Circuit court found Gilding to be a credible witness.

Stephen L. Demeter, MD, (Dr. Demeter) testified that Gilding had a pre-existing condition, specifically "[d]egenerative disease of the cervical spine." Acknowledging the trauma to Gilding's cervical cord as a result of the accident, Dr. Demeter opined in the IME that

> [b]ut for that fall, [Gilding] would not have sustained the neurological insult. However, without the degenerative disease of the cervical spine, it is unlikely that the incident occurring on 9/15/06 would have caused the neurological compromise. Accordingly, [Gilding's] condition, result of the fall on 9/15/06, is attributed both to his pre-existent cervical degenerative changes as well as to the effects of that fall.

At trial, Dr. Demeter testified that "without the alleged trauma, [Gilding] may or may not have had these problems develop with time. Without the pre-existing degenerative disease of the cervical spine, the trauma would've been insufficient to cause his problems." Dr. Demeter concluded that the pre-existing condition, combined with the trauma from the fall, "caused [Gilding] to have his condition."

Dr. Demeter explained that because there was no scientific basis for making an apportionment, he relied on past court decisions that "said when there is no scientific basis, you just apportion it equally[.]" Therefore, he apportioned damages equally--50% to the pre-existing condition and 50% to the fall from the van.

On cross-examination, Dr. Demeter testified that "eggshell plaintiff" was an accurate description of Gilding. He also testified that nothing in the medical records indicated any prior symptoms like those Gilding experienced after the accident.

According to the testimony of Gilding and Dr. Demeter, any pre-existing degenerative disease of the cervical spine was dormant or latent when Gilding fell as he stepped out of the van. Dr. Demeter indicated that but for the fall, Gilding would not have sustained his resulting injury. The "thin skull" or "eggshell plaintiff" doctrine makes SOH liable for damages for the aggravation of Gilding's pre-existing but dormant condition. Because SOH is liable for all damages legally caused by Gilding's September 15, 2006 accident, circuit court did not err when it did not apportion damages.

C. Circuit court's finding of sole liability in favor of Gilding was not against the weight of the evidence.

SOH contends circuit court erred in finding Gilding to be a credible witness. SOH also argues that the Federal government should have been apportioned a share of any liability because Federal guards assisted in the disembarkment of inmates from the van. SOH also suggests Gilding bore a share of liability for negligently exiting the van.

1. We decline to disturb circuit court's finding that Gilding was a credible witness.

"[T]he credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22

(2001). "It is not the function of appellate courts to second-guess the trier of fact where there is substantial evidence in the record to support its conclusion." Stanford Carr Development Corp. v. Unity House, Inc., 111 Hawai'i 286, 296-297, 141 P.3d 459, 469-470 (2006) (quoting In re Estate of Herbert, 90 Hawai'i 443, 454, 979 P.2d 39, 50 (1999)). Because there was substantial evidence in the record to support circuit court's determination that Gilding was credible, we do not disturb circuit court's finding.

> 2.   Circuit court did not err when it failed to apportion any liability to the Federal government for Gilding's injury.

SOH argues that liability should have been apportioned between SOH and the Federal government because, according to Gilding's testimony, a Federal guard had helped inmates out of the van. SOH misrepresents the testimony.

Ronald Moreno, another inmate at the time of the incident, testified that a SOH guard, not a Federal guard, was standing near the van as inmates exited. Gilding testified that a SOH guard placed a stool on the ground in front of the door for the inmates to step on as they exited the van. Gilding said a Federal guard stood to the left of the van door and two SOH guards stood to the right. Gilding thought the Federal guard was standing closest to the van door. Gilding claimed he had no recollection of anyone helping him out of the van or helping him up after he fell.

In Gilding's motion for leave to name Joanne Unutoa as an additional lay witness, he provided a letter from Federal counsel regarding the procedures and practices when FDC staff members receive SOH prisoners. The letter stated: "[T]he FDC staff member does not assist the [SOH] prisoners while they are exiting the [SOH] vehicle as this task is performed by [SOH] employees who operated and/or occupied the [SOH] vehicle carrying the [SOH] prisoners."

Circuit court did not err in concluding SOH, not the Federal government, breached its duty of care to Gilding by failing to provide reasonable assistance in disembarking from the van.

3. **Circuit court did not err in failing to apportion any liability to Gilding for alleged negligence as he stepped out of the van.**

SOH contends Gilding was negligent as he exited the van by not putting his right foot flat on the stool as he stepped down. SOH argues that if Gilding had "put his foot flat on top of the stool, the stool should not have moved."

Gilding testified that as he stepped out of the van, he put his right foot on the step and then brought his left foot down next to his right. He explained that it had to be done that way because of the leg shackles. SOH asked Gilding if he stepped with his "whole foot on the whole top of the stool[,]" to which Gilding replied, "I stepped on the stool, yes."

SOH argues on appeal that if Gilding had stepped on the stool in the manner he described, "it is difficult to see how the stool could have moved[.]" Therefore, SOH argues, Gilding's story is not credible and circuit court erred in not attributing some liability to Gilding's alleged negligence.

Because circuit court found Gilding to be a credible witness, circuit court did not err in concluding there was no basis to apportion any liability to him.

## IV. GILDING'S CROSS-APPEAL

A. **Circuit court erred when it found insufficient evidence to support an award of future medical expenses.**

Gilding contends circuit court erred in finding "there was insufficient evidence presented at trial to support an award of any future medical expenses." Gilding points out that this finding, FOF 37, directly conflicts with FOF 28, which provides:

> 28. Undisputed evidence presented at trial, including the testimony of [Gilding's] occupational medicine expert Dr. Demeter, shows that [Gilding] will require further

medical care and medication for his pain and nerve symptoms for the indefinite future, which [Gilding] testified costs between $250 to $400 a month, and [Gilding] also requires the use of a hospital bed at the cost of $166 per month.

We review a circuit court's FOFs under the clearly erroneous standard. Chun, 106 Hawaiʻi at 430, 106 P.3d at 353. A FOF must be supported by substantial evidence. Id. Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Leslie, 91 Hawaiʻi at 399, 984 P.2d at 1225. On review, the appellate court may take into consideration the uncontradicted evidence contained in the record. Molokoa Village Development Co., Ltd., 60 Haw. at 593, 593 P.2d at 382. FOF not challenged on appeal are binding on the appellate court. Okada Trucking Co., Ltd., 97 Hawaiʻi at 458, 40 P.3d at 81.

"[T]o permit an award for future medical . . . expenses," a plaintiff must provide sufficient evidence to show the medical expenses are necessary and the charges reasonable. Condron v. Harl, 46 Haw. 66, 76, 374 P.2d 613, 619 (1962). Upon such a showing, a plaintiff may recover the reasonable value of future medical services. Kometani v. Heath, 50 Haw. 89, 95, 431 P.2d 931, 936 (1967).

Dr. Demeter testified that Gilding would need further care for "analgesic therapy for his pain, physical therapy, work hardening program for his general condition to be able to get back to work." Gilding testified he took medications costing between $250 and $400 per month. Gilding also testified he used a hospital bed. The rental charge of $166.39/month for the bed was reflected in the Amended Lien.

The circuit court found Gilding to be a credible witness. FOF 28, which was not challenged on appeal, found that undisputed evidence was presented showing that Gilding would need further medical care and medication.

Based on the evidence presented and the uncontested findings in FOF 28, we conclude circuit court erred in finding

there was insufficient evidence to support an award of future medical expenses.

B.    Circuit court did not err when it found that Dr. Male's testimony was not credible.

Gilding appears to argue that because Dr. Male was qualified as an expert and provided uncontroverted testimony regarding Gilding's economic losses, circuit court erred in finding his testimony not credible.  However, this is not the standard by which the credibility of a witness is reviewed by an appellate court.  As previously noted, "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001).  We do not disturb circuit court's finding that Dr. Male was not credible.

C.    Circuit court did not err in finding insufficient evidence to support an award for loss of Gilding's past and future earning capacity and loss of past and future household services.

Dr. Male testified as an expert witness on behalf of Gilding regarding economic losses incurred by Gilding as a result of his injuries.  The circuit court did not find Dr. Male's testimony credible.  With no other witnesses testifying as to economic losses, the circuit court did not err in finding insufficient evidence to support an award of past and future earning capacity damages or past and future household services damages.

D.    Circuit court erred in entering judgment in favor of Gilding for $300,516.

Gilding contends COL 8, which awarded Gilding $300,516, is wrong.  On cross-appeal, Gilding fails to argue this point of error and thus, this point is waived, other than as it is raised and addressed in Gilding's other points of error.  Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived.").  As previously stated, circuit court erred when

14

it found insufficient evidence to support an award for future medical expenses.  To this extent, circuit court erred in entering judgment in favor of Gilding for only $300,516.

## V.    CONCLUSION

We remand this case to the Circuit Court of the First Circuit for further proceedings to determine the amount of special damages for Gilding's future medical expenses.  In all other respects, the Judgment entered March 9, 2011, in the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawai'i, June 29, 2012.

On the briefs:

Marie Manuele Gavigan
Deputy Attorney General
for Defendant-Appellant/
Cross-Appellee.

Eric A. Seitz
Della A. Belatti
Ronald N.W. Kim
for Plaintiff-Appellee/
Cross-Appellant.

Chief Judge

Associate Judge

Associate Judge

15